The Honorable Pat Flanagin State Representative 935 North Washington Forrest City, Arkansas 72335
Dear Representative Flanagin:
This is in response to your request for an opinion on the following questions relating to Acts 916 and 917 of 1995:
 1. What is the penalty for the failure of a school district to levy the required minimum millage?
 2. Are both penalties applicable or does the penalty contained in the last act signed by the Governor, Act 917, conflict with and therefore control in such a situation?
As discussed in your request, both Act 916 and Act 917 specify certain consequences arising from a school district's failure to levy the "base millage," as defined in the acts. Under Act 916, there is levied against each resident of such a school district an income tax surcharge of ten percent of such resident's tax liability. Act 916, § 2(a). Funds arising from the surcharge are to be distributed to each such school district in an amount equal to the difference between the amount that would have been available to the district for maintenance and operation if it had levied the base millage, and the amount so available from the millage actually levied by the district (such amount being referred to herein as the "shortfall amount"). Act 916, § 4. Act 916 also contains the following provision:
 Notwithstanding the provision of any other act of this 80th General Assembly, the enforcement mechanisms of this act shall constitute the exclusive sanctions against a local school district for failure to levy the basic [sic] millage.
Act 916, § 5.
Act 917 also provides for distribution of the shortfall amount to each district failing to levy the base millage. Act 917, § 7(b). Under Act 917, however, the funds for such distributions are to come, not from the income tax surcharge of Act 916, but from the following sources:
 (1) The monthly distribution of County Aid provided for under Ark. Code Ann. § 19-5-602(b) derived from the revenues provided in Ark. Code Ann. § 19-5-602(a).
 (2) The monthly distribution of Municipal Aid provided for in Ark. Code Ann. § 19-5-601(b) derived from the revenues provided in Ark. Code Ann. § 19-5-601(a).
 (3) Such funds as may be provided by appropriations of the General Assembly for County Jail/Medical Reimbursements under the provisions of Ark. Code Ann. § 12-27-114 et seq.
Act 917, § 7(a). Funds from the sources listed in section 7(a) are referred to herein as "turnback funds."
In my opinion, the answers to your questions will depend upon whether Act 916 is unconstitutional. I am enclosing a copy of Op. Att'y Gen. 95-319, issued today, in which I conclude that, while the substance of Act 916 is probably unobjectionable on constitutional grounds, the act's constitutionality could be challenged by a litigant arguing that the bill that became Act 916 (HB 1739) was "so altered or amended on its passage through either house [of the General Assembly] as to change its original purpose," in violation of Ark. Const. art. 5, § 21. The issue can be determined definitively, of course, only by a court. The reasons for my conclusions are set forth in detail in Op. Att'y Gen. 95-319. Because the answers to your questions depend upon the validity of Act 916, I will answer your questions in the alternative, assuming that Act 916 is unconstitutional and assuming it is not.
If Act 916 is unconstitutional
In response to your first question, it is my opinion that, if Act 916 is unconstitutional, the penalty for a school district's failure to levy the base millage will be the distribution of the shortfall amount to that district from turnback funds, as provided in Act 917, and the imposition, upon the school district, of the other penalties associated with a failure to levy the base millage that are set forth in Act 917.[1]
In my view, if Act 916 is unconstitutional under Ark. Const. art. 5, §21, it likely is unconstitutional in its entirety, including section 5 quoted above, which I understand to have been intended by the General Assembly to negate the operation of the base millage-related penalties of Act 917. Because, however, it might be argued that section 5 of Act 916 is no more related to the original purpose of HB 1739 than is the remainder of the substantive provisions of Act 916, it likely will be, in my opinion, of no effect if Act 916 is in fact unconstitutional. If Act 916 is unconstitutional in its entirety, there remains in law no expression of any legislative intent that the whole of Act 917 should not operate as written and, in my view, the consequences of a failure to impose the base millage set forth in Act 917 would be effective.
In response to your second question, it is my opinion that the order in which the acts were signed makes no difference in the result in this instance. If Act 916 is unconstitutional under Ark. Const. art. 5, § 21, it likely was and is a nullity regardless of the time at which it was signed and therefore could not "conflict" with Act 917 within the meaning of applicable case law or the statutory provision quoted later in this opinion (A.C.A. § 1-2-207(b) (Cum. Supp. 1993)) governing which of two conflicting legislative provisions will prevail.
If Act 916 is not unconstitutional
If it is assumed that Act 916 is not unconstitutional, it seems appropriate to answer your second question first, as an answer to your first question will necessarily be subsumed in an answer to your second question.
First, it is my opinion that a district failing to levy the base millage will not receive the shortfall amount twice, once under Act 916 and once under Act 917. Both acts purport to make up the same shortfall from different sources. Both require the Department of Education to distribute a determinable amount of money, the shortfall amount, to each school district not levying the base millage. The Department must determine the shortfall amount by subtracting, from the amount that would have been available had the base millage been levied, only that amount arising from the millage actually levied by the district. There is no provision in either act for the Department to deduct, from the amount to be distributed under such act, the amount that has been or will be distributed under the other act. It therefore appears that, in the event both provisions were held to be operable, a district failing to levy the base millage would receive twice the shortfall amount. That result clearly would be absurd, in view of the stated goal of Act 917 to achieve "substantially equal and constitutionally appropriate revenue for the education of each similarly situated child in the public schools regardless of where that child resides. . . ." Act 917, § 2(g)(1). A literal statutory interpretation that leads to an absurd result must be rejected if an alternative interpretation effects the statutory purpose.Henson v. Fleet Mortgage Co., 319 Ark. 491, 892 S.W.2d 250 (1995).
It might also be noted in this regard that (1) a lower millage rate means a greater shortfall amount, (2) the amount of the income tax surcharge does not vary according to the degree by which the actual millage is less than the base millage, and (3) the distribution of turnback funds to a district is not a direct burden upon the district or its taxpayers; rather, the burden falls upon the county and the city in which the district is located, and their taxpayers. These factors, coupled with an interpretation that districts are entitled to receive twice the shortfall amount, might encourage districts to levy no millage at all for maintenance and operation. In such a case, income taxpayers in the district would be no worse off than if a millage only slightly less than the base millage had been levied (and they would be better off to the extent they are also property taxpayers); the district would receive more money than it would have had it levied either the base millage or an amount only slightly less than the base millage; and more of the burden of supporting the public schools would be shifted from the district to the city and county and their taxpayers. In my opinion, this scenario reinforces the conclusion that it would be absurd to interpret the acts to require that a district receive the shortfall amount under each act. Both acts clearly imply that the General Assembly intended to encourage school districts to levy local school taxes at least the base millage, not to encourage them to levy a lesser millage or none at all.
Legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993); City ofFort Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). This is especially so in the case of acts passed during the same session of the General Assembly. Uilkie v. State,309 Ark. 48, 827 S.W.2d 131(1992); Love v. Hill, 297 Ark. 96, 759 S.W.2d 550
(1988). The absurdity that would result from the application of both acts as written, however, leads me to conclude that there is an irreconcilable conflict between the two acts with respect to distribution of the shortfall amount. When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho,318 Ark. 637; Ward School Bus Mfg., Inc. v. Fowler, 261 Ark. 100,547 S.W.2d 394 (1977).
Which of the two acts is repealed by implication? Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City of Fort Smith,268 Ark. 157, 594 S.W.2d 238 (1980). This rule also applies to conflicting acts passed in the same legislative session, Sargentv. Cole, 269 Ark. 121,598 S.W.2d 749 (1980), although, in such a case, the ordinary presumption that the legislature did not intend a repeal by implication is strengthened. Merchants' Transfer Warehouse Co. v. Gates,180 Ark. 96, 21 S.W.2d 406 (1929). With respect to such acts, A.C.A. § 1-2-207(b) (Cum. Supp. 1993) provides:
 When more than one (1) act concerning the same subject matter is enacted by the General Assembly during the same session, whether or not specifically amending the same sections of the Arkansas Code or an uncodified act, all of the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The last enactment is the one which the Governor signed last.[2]
It is not altogether clear which of Act 916 or Act 917 is the later act, in the sense of which the Governor signed last or otherwise. The House of Representatives passed the bills that became Acts 916 and 917 on the same day, March 30, 1995. The Senate also approved both bills on the same day, March 31, 1995. The version of HB 2145 (Act 917) passed by the Senate contained an amendment (the substance of which is not relevant to the questions addressed in this opinion), in which the House of Representatives concurred on April 4, 1995, which was the last legislative action on either bill.
The Governor signed both bills into law on the same day, April 5, 1995. The Secretary of State thereafter designated HB 1739 as Act 916 and HB 2145 as Act 917. It is my understanding that the Secretary of State, perhaps in consideration of A.C.A. § 1-2-207(b) quoted above, generally numbers acts of the General Assembly in the order in which they are signed by the Governor. I am informed, however, that there is some question concerning the order in which the Governor signed the bills. I am also informed that it was apparently the intention of both the General Assembly and the Governor that HB 1739 (Act 916) would be signed last, thus presumably making Act 916 the later act and controlling in the event of a conflict.
As noted above, section 5 of Act 916 provides that the "enforcement mechanisms" of Act 916 will be the "exclusive sanctions" for a district's failure to levy the base millage. It is my understanding that the General Assembly may have intended this provision to negate the operation of sections 7(a) and (b) of Act 917; in other words, it appears that the General Assembly may not have intended for turnback funds to be used to make up school funding shortfalls arising from failures to levy the base millage, notwithstanding the enactment of sections 7(a) and (b) of Act 917.
I also understand that the Executive Director of the Arkansas Code Revision Commission is of the view that sections 7(a) and (b) of Act 917 are in irreconcilable conflict with Act 916, and that section 5 of Act 916, coupled with the substantially simultaneous passage of both acts, is effective to override both the general rule of statutory construction that the later passed of two conflicting statutes enacted in the same legislative session will govern, and A.C.A. § 1-2-207(b), quoted above.[3] I am informed by the Executive Director that he intends to codify Act 916, but to place sections 7(a) and (b) of Act 917 in a footnote to the codified provisions, indicating that those sections are repealed by implication by Act 916.
Although I cannot be sure how a court would rule, it is my opinion that it is more likely than not that, if Act 916 is constitutionally valid, sections 7(a) and (b) of Act 917 will be deemed repealed by implication by Act 916. There are several reasons for my conclusion.
First, it does not appear to be possible to say that one act is the later of the two in any legally significant sense. The bills were considered, approved, and signed into law substantially simultaneously. There appears to be substantial doubt about which of the two acts was signed by the Governor last and which is thus the later act for purposes of the last sentence of A.C.A. § 1-2-207(b). Even if it is established conclusively that Act 917 was signed later, it is my opinion that the last sentence of A.C.A. § 1-2-207(b) may be open to question on constitutional grounds, as explained in footnote 2, thus potentially making the order in which the Governor signed the acts irrelevant.
If one disregards the time of the Governor's signature, Act 917 is the later act in one sense because, clearly, it was the last of the two acts upon which either house of the General Assembly took any action (the House of Representatives' approval, on April 4, 1995, of a Senate amendment). As noted above, however, the amendment was not relevant to the portions of Act 917 at issue here, creating an argument that the action taken by the House of Representatives on April 4 should not be considered in determining which act, if either, is later in any legally significant sense.
Even if it ultimately is held that Act 917 is the later act, other factors lead me to conclude that it is more likely than not that sections 7(a) and (b) of Act 917 will be deemed repealed by implication by Act 916.
While section 5 of Act 916 does not, in my opinion, unequivocally express a legislative intent that sections 7(a) and (b) of Act 917 are to be inoperative, reasonable minds may differ, and that appears to have been the intent in fact. A court, accordingly, likely would afford some weight to the section in determining which provisions should be operative.
Also, the Supreme Court of Arkansas has held that the "last passed" rule will not invariably be applied:
 There is another rule of statutory construction which is that, as between two conflicting statutes passed at the same session, ordinarily the statute last passed is to govern; but this "last passed" rule is admitted to be merely a rule of statutory construction and must and does yield when it is clear that the Legislature intended the earlier Act passed at the same session, to be the governing Act. In 82 C.J.S. 836, in discussing conflicting or inconsistent statutes and, after recognizing the rule of construction that generally" the last Act passed" is the governing Act, the holdings of the various cases are, however, summarized in this language:
 "Where Acts passed at the same session contain conflicting clauses, the whole record of legislation will be examined to ascertain the Legislative intent, and such intent, if ascertained, will be given effect, regardless of priority of enactment."
Horn v. White, 225 Ark. 540, 545-546, 284 S.W.2d 122 (1955) (footnotes omitted). The court also stated that the rule that legislative intent prevails over time of passage is particularly strong when, as is the case with Acts 916 and 917, neither act contains an emergency clause. Horn,225 Ark. at 545, fn. 5. Even when applying the rule, the court sometimes has noted that its use gives a result consistent with legislative intent. See, e.g., Williams v. State, 215 Ark. 757, 223 S.W.2d 190
(1949). In my opinion, it is likely that there is sufficient indication that Act 916, rather than Act 917, was intended by the General Assembly to be operative to enable a court to hold Act 916 the governing law.
Finally, a variant of the rule that specific legislation controls general legislation on the same subject, Ward School Bus, 261 Ark. 100, may be applicable here. Act 916's surcharge was enacted solely as a source of revenue to make up shortfalls in school funding, and revenues from the surcharge may not be applied to any other purpose. Ark. Const. art. 16, § 11. Revenues from the surcharge will not arise absent the existence of one or more funding shortfalls; in other words, in the tax year following any year in which all districts have levied at least the base millage, the surcharge will not be imposed. The turnback funds specified in Act 917, on the other hand, exist without regard to any school funding shortfall and, indeed, must be redirected from other intended uses in the event they must be used to make up for a shortfall. These facts, in my view, would tend to reinforce a conclusion that Act 916, in creating a new scheme for funding shortfalls, should prevail, as it is a more complete and self-contained mechanism for funding shortfalls than is Act 917.
In view of the foregoing, it is my opinion that that, if Act 916 is not unconstitutional, it is more likely than not that a court would hold the provisions of Act 916 to be operable law and that sections 7(a) and (b) of Act 917 to have been repealed by implication by Act 916.[4]
In sum, then, it is my opinion that it is likely that only the surcharge imposed by Act 916, and not the provisions of sections 7(a) and (b) of Act 917, will apply with respect to a school district failing to levy at least the base millage, provided Act 916 is not unconstitutional.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] Section 3(k) of Act 917 provides that, for the 1995-96 school year, a school district failing to levy the base millage at the September 1995 school election shall not expend funds for school construction not under contract on February 22, 1995. Section 8(p) provides that the State Department of Education shall not grant a waiver of the minimum salary requirements set forth in Act 917 to a district not in compliance with the base millage requirement.
[2] In my view, the last sentence of A.C.A. § 1-2-207(b) may be open to question under Ark. Const. art. 4, § 2, in that it might be argued to permit the Governor to exercise legislative power properly belonging to the General Assembly when he determines which of two or more (perhaps intentionally) conflicting acts to sign last and therefore which shall become law.
[3] I may ascribe somewhat less relevance to section 5 of Act 916. Unlike the surcharge of Act 916, which is imposed upon the income taxpayers of a school district failing to levy the base millage, and thus might be properly viewed as a sanction against the district and its residents, the provisions of sections 7(a) and (b) of 917 are enforced against counties and municipalities, not against school districts. Indeed, school districts are rewarded, not sanctioned, by the operation of sections 7(a) and (b) of Act 917. In my opinion, section 5 of Act 916 is not effective, in and of itself, to negate the operation of sections 7(a) and (b) of Act 917 because sections 7(a) and (b) do not constitute "sanctions against a local school district," the only consequences mentioned in section 5 of Act 916. In addition, section 5 of Act 916 is not rendered meaningless by such an interpretation, because, as described in footnote 1, sections 3(k) and 8(p) of Act 917 contain consequences for failure to levy the base millage that apply directly to school districts, to which section 5 of Act 916 may be deemed to refer.
[4] In my opinion, section 5 of Act 916 operates, in and of itself, to negate the effectiveness of sections 3(k) and 8(p) of Act 917, provided Act 916 is not unconstitutional.